UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

CLIFTON HUNT,

Plaintiff,

v.                                                                    20-CV-1249-LJV
                                                                      DECISION & ORDER

JOSEPH NOETH, *et al.*,

Defendants.

———————————————————

On September 8, 2020, the *pro se* plaintiff, Clifton Hunt, commenced this action

under 42 U.S.C. § 1983.  Docket Item 1.  He asserts claims arising from his

confinement at the Attica Correctional Facility ("Attica").  Docket Item 1.  Hunt has twice

amended his complaint, Docket Items 8 and 15, and this Court has screened his claims

under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Docket Items 7, 10, and 17.  As a result,

the Court allowed two claims to proceed to service: (1) Hunt's retaliation claim against

Attica Deputy Warden Patricia Ciulla and (2) Hunt's inadequate medical care claim

against Attica Supervising Physician Jadow Rao.  *See* Docket Item 17.

On December 29, 2022, Ciulla moved to dismiss the claim against her, Docket

Item 22, and the New York State Attorney General's Office ("AG's Office") filed a

suggestion of death for Dr. Rao, Docket Item 23.  Several months later, Hunt moved to

file a third amended complaint, Docket Items 36 and 39; he also moved for an extension

of time to substitute, Docket Item 40, and then moved to substitute the administrator or

executor of Rao's estate, Docket Item 42.  The pending motions now are ripe for

decision.

For the reasons that follow, Ciulla's motion to dismiss is granted, and Hunt's

motions to amend, for an extension of time to substitute, and to substitute are denied.

**FACTUAL BACKGROUND**[1]

I.   **INADEQUATE MEDICAL CARE**

On September 12, 2017, Hunt "submitted an administrative grievance" alleging

that he was denied "medical treatment for an infection, painful constipation[,] and blood

in his stool."  Docket Item 15 at 6.  "The cause of" those issues was "the high soy-

protein diet" that Attica "provide[s] to inmates."  *Id.*  "The attending physician," Dr. Rao,

knew that Hunt's medical issues were caused by the high-soy diet, but he addressed

only some of those issues and "failed to provide [Hunt] a soy-free diet."  *Id.*; *see* Docket

Item 1 at 70-71.

On October 10, 2017, Hunt appealed his grievance to Attica Superintendent

Joseph Noeth "and requested a soy-free diet."  Docket Item 15 at 6.  On November 17,

2017, Hunt appealed to the Central Office Review Committee ("CORC").  *Id.*  More than

a year later, on March 6, 2019, the "CORC responded to [Hunt's] grievance," *id.*, finding

---

[1] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In deciding the motion, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

The second amended complaint, Docket Item 15, is the operative pleading.  But as it has done previously, the Court "liberally construes the second amended complaint as incorporating the allegations from Hunt's prior complaints" and other filings.  *See* Docket Item 17 at 7-8 n.3; *see also* Docket Items 1, 8, and 16.  The following facts are taken from those documents and viewed in the light most favorable to Hunt.

"insufficient evidence of improper care or malfeasance by staff," Docket Item 1 at 80.

All the while, Hunt's "need [for] a[n alternative] medical diet caus[ed] him the infliction of

unnecessary painful medical conditions." Docket Item 15 at 6.

## II.      RETALIATION

More than six months later, on September 23, 2019, LeSean Salerno, Hunt's

son, "attempted to visit [Hunt] at [Attica] but was denied entrance by" Deputy Warden

Ciulla and other Attica officials due to "a pending criminal case" against Salerno.  *Id.* at

4; *see* Docket Item 8 at 7.  The next day, Salerno "was sent [] correspondence from"

Attica "informing him that his visiting privileges had been suspended indefinitely based

solely on his pending criminal case."  Docket Item 15 at 4.  Hunt then "submitted a

grievance" alleging "that [the] sole basis for denying his visitor was contrary to

established procedures."  *Id.*

On October 3, 2019, Ciulla responded to Hunt's grievance.  Docket Item 8 at 7;

Docket Item 1 at 51.  Her response "stated [1] [that] the reasons for [] Salerno's

suspension [were] 'articulated in the suspension letter,' [2] that [Hunt] did 'not have

standing to file an appeal,' and [3] [that] 'no further action' would be taken."  Docket Item

8 at 7.  On October 15, 2019, Hunt amended his grievance to allege that Ciulla denied

Salerno entry "in 'temporal proximity' [to Hunt's] filing administrative grievances against

staff members at [Attica]."  *Id.* at 7-8.  A few days later, "a hearing was held on [Hunt's]

grievance concerning the denial of visiting privileges with [] Salerno."  Docket Item 15 at

4-5.  "This grievance was denied[,] and [Hunt] appealed the retaliatory denial."  *Id.* at 5.

On January 29, 2020, the CORC "held a hearing on [Hunt's] final administrative

appeal."  *Id.*  The CORC "accepted [Hunt's] appeal unanimously in part and denied it in

3

part." *Id.*; *see* Docket Item 1 at 62.  In its decision, the CORC "noted" that (1) Salerno

"appeal[ed] th[e] suspension to the Commissioner's office on October 5, 2019, and his

visiting privileges were restored"; (2) "the proper procedure was for [] Salerno to receive

prior approval to visit from [] Noeth"; and (3) "the grievance program is not intended to

be an adversarial process and that no reprisals of any kind should be taken against an

inmate."  Docket Item 15 at 5.

## PROCEDURAL BACKGROUND

This case has a long and winding procedural history.

Hunt initially sued Ciulla, Rao, Noeth, and several "John/Jane Doe" correctional

officers.  Docket Item 1.  As noted above, Hunt already has amended his complaint

twice, Docket Items 8 and 15, and this Court has screened each of Hunt's three

complaints, Docket Items 7, 10, and 17.  The only claims to survive screening were

Hunt's retaliation claim against Ciulla and his inadequate medical care claim against

Rao.  *See* Docket Items 10 and 17.  The Court dismissed Hunt's other claims, including

his official-capacity claims, *see* Docket Item 7, and—after giving Hunt an opportunity to

amend—his family visitation claim, his due process claim, his cruel and unusual

punishment claim, and his retaliation and inadequate medical care claims against Noeth

and the John/Jane Doe defendants, *see* Docket Items 10 and 17.

On December 29, 2022, Ciulla moved to dismiss the claim against her.  Docket

Item 22.  The same day, the AG's Office filed a suggestion of death informing the Court

that Rao "died on January 3, 2021," before he could be served.  Docket Item 23.  The

Court then advised Hunt that he must move to substitute a "successor or

representative" of Rao's estate within 90 days of the date on which the suggestion of death was filed.  Docket Item 24.

On January 26, 2023, Hunt moved for "an extension of time," Docket Item 25, and to amend his complaint, Docket Item 26.  The Court granted the first of those motions and extended Hunt's time to respond to the motion to dismiss.  Docket Item 27.  About a month later, Ciulla responded to Hunt's motion to amend, Docket Item 29, and Hunt responded to Ciulla's motion to dismiss, Docket Item 30.  Two weeks later, Ciulla replied in support of her motion.  Docket Item 31.  Hunt then moved for two more "extension[s] of time"—the first on March 15, 2023, Docket Item 32, and the second on April 13, 2023, Docket Item 34.  The Court granted those motions and extended Hunt's time to reply in support of his motion to amend.  *See* Docket Items 33 and 35.

On May 17, 2023, Hunt filed a document, Docket Item 36, that this Court construed as a second motion to amend his complaint, *see* Docket Item 38.  The Court therefore denied Hunt's first motion to amend as moot and ordered Ciulla to respond to Hunt's second motion to amend.  *Id.*  On July 19, 2023, Hunt filed a memorandum in support of his second motion to amend.  Docket Item 39.  On July 24, 2023, he moved for an extension of time to move to substitute, Docket Item 40, and on August 10, 2023, Hunt moved to substitute the administrator or executor of Rao's estate, Docket Item 42.  About a week later, Ciulla responded to Hunt's second motion to amend.  Docket Item 43.  After requesting and receiving a final "extension of time," Docket Items 45 and 46, Hunt replied in support of his second motion to amend, Docket Item 48.

Now pending before this Court are Ciulla's motion to dismiss, Docket Item 22; Hunt's second motion to amend, Docket Item 39; Hunt's motion for an extension of time to substitute, Docket Item 40; and Hunt's motion to substitute, Docket Item 42.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

I.     **MOTION TO DISMISS RETALIATION CLAIM**

To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). The plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff

may rely on circumstantial evidence to prove causation.  *See Colon v. Coughlin*, 58
F.3d 865, 872-73 (2d Cir. 1995); *see also Espinal*, 558 F.3d at 129 ("A plaintiff can
establish a causal connection that suggests retaliation by showing that protected activity
was close in time to the adverse action.").

Ciulla argues that Hunt's retaliation claim fails.  Docket Item 22-1.  More
specifically, while she concedes that filing a grievance constitutes protected activity, she
says that Hunt "falls incredibly short" of showing a causal connection between his filing
of grievances and Ciulla's denial of Salerno's visitation privileges.  *Id.* at 4-5.  This Court
agrees.

The Court previously found that Hunt's retaliation claim survived screening based
on the allegations that one of his grievances was denied on March 6, 2019, and that
Ciulla prevented Salerno from visiting Hunt on September 23, 2019, about six months
later.  Docket Item 10 at 9-10.  But as the Court noted, a claim that survives screening
will not necessarily survive a motion to dismiss.  *Id.* at 10 n.4 (citing *Pino v. Ryan*, 49
F.3d 51, 53 (2d Cir. 1995)).  And at the motion to dismiss stage, the March 2019 denial
of Hunt's grievance cannot sustain his retaliation claim.

The first element of a retaliation claim requires a plaintiff to show that he
engaged in protected activity, such as filing or appealing a grievance.  The mere denial
of a grievance cannot be a protected activity because it is an action taken by prison
officials—not by the plaintiff.  Here, Hunt alleges that he submitted the grievance at
issue on September 12, 2017, and appealed its denial to the CORC on November 17,
2017.  Docket Item 15 at 6.  So November 17, 2017, is the latest possible date on which

Hunt engaged in protected activity.  And that is more than 22 months before he was

denied visitation with Salerno.  *See id.*

        "There is no 'bright line to define the outer limits beyond which a temporal

relationship is too attenuated to establish a causal relationship.'"  *Burton v. Lynch*, 664

F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (quoting *Gorman-Bakos v. Cornell Coop.*

*Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).  As this Court has noted, courts have

suggested that even a six-month gap between protected activity and adverse action

may support an inference of retaliatory intent.  *See* Docket Item 10 at 9-10.  But the 22-

month gap between Hunt's appeal of his grievance and the denial of Salerno's visit is

simply too long to sustain such an inference.  Likewise, Hunt's conclusory allegation

that there is "temporal proximity" between Salerno's attempted visit and Hunt's

"numerous administrative grievances against" Attica staff, *see* Docket Item 15 at 4,

cannot establish a causal connection between Hunt's pursuit of his grievances and

Ciulla's denial of Salerno's visit.

        Additionally, "[a]s a general matter, it is difficult to establish one defendant's

retaliation for complaints against another defendant."  *Kotler v. Boley*, 2018 WL

4682026, at *4 n.2 (S.D.N.Y. Sept. 28, 2018) (citation omitted); *see Wright v. Goord*,

554 F.3d 255, 274 (2d Cir. 2009) (plaintiff could not sustain retaliation claim against

corrections officer because only alleged basis for retaliation was complaint against a

different officer); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011)

(plaintiff "failed to provide any basis to believe that [the defendant] retaliated for a

grievance that she was not personally named in").  Here, the grievance preceding

Salerno's attempted visit was about Hunt's inadequate medical care and Rao's conduct.

*See* Docket Item 1 at 65-73.  It did not even name Ciulla, let alone allege that she acted improperly.  *See id.*  And Hunt has alleged no facts suggesting that Ciulla might be motivated to retaliate against Hunt on Rao's behalf.[2]  *See* Docket Items 1, 8, and 15.

In sum, Hunt has not plausibly alleged that Ciulla acted with retaliatory motivation.  Nothing in his response—which consists mostly of copies of medical grievances from 2018 and copies of other grievances filed after Salerno's attempted visit, *see* Docket Item 30—suggests otherwise.  He therefore has failed to state a retaliation claim against Ciulla.

## II.   MOTION TO AMEND

Hunt has filed a proposed third amended complaint ("TAC"), Docket Item 36, and a memorandum in support of his second motion to amend, Docket Item 39.  The facts alleged in the TAC remain the same:  Hunt describes how he was denied medical care and a soy-free diet, how Ciulla interfered with Salerno's visitation privileges, and the grievance processes following those incidents.  *See generally* Docket Item 36.

Nevertheless, the TAC would significantly expand the scope of this action.  In addition to re-alleging the claims against Ciulla and Rao, the TAC asserts new state and federal claims and attempts to revive numerous claims that this Court already has dismissed without leave to amend.[3]  *Id.*

---

[2] Hunt also alleges that he filed a grievance against Ciulla *after* Salerno's attempted visit.  Docket Item 15 at 4-8.  But that grievance cannot serve as evidence of retaliatory motive for actions taken before it was filed.

[3] It also attempts to add Salerno as a plaintiff and numerous Attica officials as defendants, including some parties who already have been dismissed from this action. Docket Item 36.

"Leave to amend, though [generally] liberally granted, may properly be denied for [reasons including] 'undue delay, . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, consideration of those factors counsels against allowing Hunt to amend his complaint a third time.

## A.    Futility

First—and most important—Hunt's proposed amendment would be futile because the TAC neither cures the deficiencies in his retaliation claim against Ciulla nor raises other viable claims.

### 1.    Retaliation Under Section 1983

As discussed, Hunt has not plausibly alleged that Ciulla acted with retaliatory motive when she prevented Salerno from visiting Hunt.  *See supra* at 6-9.  Nothing in the TAC changes that.  *See* Docket Item 36.  Rather, the TAC alleges that Hunt filed a grievance against Ciulla only *after* the incident with Salerno, and it does not describe other grievances that he filed close in time to Salerno's attempted visit.  *Id.*  For the reasons explained above, those allegations cannot sustain a retaliation claim against Ciulla.  In light of the TAC—which Hunt filed after he had the benefit of Ciulla's memorandum explaining the deficiencies in Hunt's claim against her—Hunt's section 1983 retaliation claim against Ciulla is dismissed without leave to amend.

Hunt also attempts to assert section 1983 retaliation claims against Noeth, the John/Jane Doe defendants, and Attica Inmate Records Coordinator L. Bizub.  *See id.* at 4-7.  But like Hunt's prior complaints, the TAC alleges only that those defendants were

10

aware of Ciulla's actions and failed to intervene.  *See id.* at 7-16; *see also* Docket Item

39 at 3 (arguing that the TAC "unequivocally shows" that the defendants "were aware

[of] and personally involved in" the deprivation of "Salerno's visiting privileges").  For the

reasons explained in this Court's screening orders, those allegations do not establish

the personal involvement of those defendants in the events giving rise to Hunt's

retaliation claim.  *See* Docket Item 10 at 10; Docket Item 17 at 7.  In fact, the Court

already dismissed those claims without leave to amend.  *See* Docket Item 17 at 7.

Allowing Hunt to amend his federal retaliation claims therefore would be futile.

### 2.    Due Process and Cruel and Unusual Punishment

This Court previously dismissed Hunt's due process claim after giving Hunt an

opportunity to amend it.  *See* Docket Item 7 at 6-10; Docket Item 10 at 6-8.  The TAC

attempts to revive that claim, but it includes no new factual allegations suggesting that

Hunt was deprived due process.  *See* Docket Item 36 at 18-19.  Hunt therefore has

failed to state a due process claim for the reasons this Court previously articulated: (1)

"the due process violation that Hunt alleges . . . did not constitute an atypical and

significant hardship," and (2) Hunt has not "demonstrate[d] why the action against him

shocks the contemporary conscience and was more than incorrect or ill-advised."

Docket Item 10 at 6-8 (citations and internal quotation marks omitted); *see* Docket Item

7 at 6-10.  So allowing Hunt to amend his due process claim would be futile.

Similarly, the TAC seems to attempt to revive Hunt's cruel and unusual

punishment claim, *see* Docket Item 36 at 17-19 (invoking the Eighth Amendment),

which this Court dismissed after giving Hunt opportunity to amend, *see* Docket Item 7 at

10; Docket Item 10 at 8-9.  The TAC does not contain new allegations supporting an

Eighth Amendment claim, *see* Docket Item 36, so granting Hunt leave to amend that claim would be futile, *see* Docket Item 10 at 8-9 ("[L]imited suspension of visitation privileges does not establish a violation of the Eighth Amendment[].").

### 3.     Freedom of Association

The TAC suggests that Ciulla's denial of Salerno's visitation privileges violated Hunt's First Amendment right to freedom of association.  Docket Item 36 at 17.

"[F]reedom of association is among the rights least compatible with incarceration."  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  "Thus, although the Constitution 'protects certain kinds of highly personal relationships' and there exists 'a right to maintain certain familial relationships . . . ,' '[s]ome curtailment of that freedom must be expected in the prison context.'"  *Miller v. Annucci*, 2019 WL 4688539, at *13 (S.D.N.Y. Sept. 26, 2019) (quoting *Overton*, 539 U.S. at 131); *see Mills v. Fischer*, 497 F. App'x 114, 116 (2d Cir. 2012) (summary order) ("Assuming that prisoners have a right under the First Amendment to have family visits, that right could not require that visits by family members be permitted on demand, but rather must be subject to reasonable restrictions on the time, place[,] and manner of visits." (citing *Overton*, 539 U.S. at 132)).

"[T]he intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation."  *Mills*, 497 F. App'x at 116. But the Second Circuit has suggested that where a plaintiff alleges "only rudeness and not malice" with respect to a denied family visit, "the denial of access on a single occasion by a prison guard who mistakenly applied a more stringent . . . rule that was not in itself unreasonable [does not] give[] rise to a constitutional claim."  *See id.* at 117.

12

Here, Hunt's newly raised freedom of association claim falls into the second of those categories.  The TAC alleges that Ciulla suspended Salerno's visitation privileges because there were criminal charges pending against him.  Docket Item 36 at 7.  As Hunt alleges in the second amended complaint, the CORC ultimately restored Salerno's visitation privileges and informed Hunt that "the proper procedure was for [] Salerno to receive prior approval to visit."  Docket Item 15 at 5.  The TAC includes a conclusory allegation that Ciulla's revocation of Salerno's visitation privileges was "arbitrary and capricious."  See Docket Item 36 at 11.  But even viewing the facts in the light most favorable to Hunt, this is a case where a single prison official mistakenly applied a "more stringent" standard to a "rule that was not in itself unreasonable," Mills, 497 F. App'x at 117—that is, requiring additional precautions when admitting visitors with pending criminal charges.

Under those circumstances—and in light of the favorable resolution of Hunt's grievance—Hunt does not have a viable freedom of association claim.  Allowing Hunt to amend his complaint to plead such a claim therefore would be futile.

### 4.    Retaliation Under State Law

In the TAC, Hunt—for the first time—asserts state law retaliation claims against Ciulla, Noeth, Bizub, and the John/Jane Doe defendants.  Docket Item 36 at 16.  Those claims fail.

As this Court previously explained, the defendants are immune from claims for money damages in their official capacities.  Docket Item 7 at 5-6.  And under New York law, they also are immune from state law claims brought against them in their individual capacities.  See N.Y. Correct. Law § 24 ("No civil action shall be brought . . . against

any officer or employee of the [D]epartment [of Corrections and Community Supervision] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."); *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) (explaining that section 24 "shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute," whether "the action is pursued in a state court or . . . in a federal court" (citations omitted)).

Because Hunt cannot bring state law claims against the defendants in either their official or individual capacities, allowing him to amend his complaint to add a state law retaliation claim would be futile.

### B.    Other Considerations

As Ciulla notes, Hunt filed the TAC "[a]lmost three years after [he] filed his original complaint."  Docket Item 43 at 2.  He already has amended his complaint twice, and this Court already has considered and dismissed many of the claims he now seeks to pursue.  At this point, allowing Hunt to continue his efforts to expand the scope of this litigation would unfairly prejudice the defendants, several of whom likely are unaware of this nearly four-year-old action.  This Court already has given Hunt a first, second, and third bite at the apple.  Allowing him a fourth—especially in light of the futility of the TAC—would go too far.  Hunt's motion to amend therefore is denied.

### III.    MOTION TO SUBSTITUTE

Federal Rule of Civil Procedure 25(a)(1) provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

Rule 25 "does not require that the statement identify the [decedent's] successor or legal representative."[4]  *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470 (2d Cir. 1998).  Therefore, if a notice of death does not identify a successor or representative to be substituted, the plaintiff may move "to enlarge the time in which to file the motion for substitution" under Federal Rule of Civil Procedure 6(b), *id.*, which provides:

> (1) *In General.*  When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b).

Here, the AG's Office filed the notice of death on December 29, 2022.  Docket Item 23.  Hunt had 90 days from that date—until March 29, 2023—to move to substitute Rao's successor or representative or to move to an extension of time to do so.  Fed. R. Civ. P. 25(a)(1); *see* Docket Item 24 (text order informing Hunt that he must move to substitute "within 90 days after service of the statement noting Dr. Rao's death" or

---

[4] A "successor" is "a distributee of an estate if the estate of the deceased has been distributed," while a "representative" is "a person lawfully designated by state authority to represent the deceased's estate."  *Gusler v. City of Long Beach*, 2015 WL 3796328, at \*2 (E.D.N.Y. June 18, 2015) (citation omitted).

"request an extension of time to do so").  But Hunt did not move for an extension of time to substitute until July 24, 2023—more than four months after his deadline expired.[5]

Because Hunt did not move for an extension of time to substitute before that time expired, the Court cannot grant him an extension under Rule 6(b)(1)(A).  The question, then, is whether Hunt's untimely motion for an extension of time to substitute demonstrates "excusable neglect" for his failure to act within the prescribed time.  *See* Fed. R. Civ. P. 6(b)(1)(B).  And the Court finds that it does not.

Hunt's motion merely asserts that at some point, Hunt "inadvertently stated that he would not pursue" his claim against Rao, and that the defendants "would not [be] prejudice[d] [by] this inadvertent[] mistake."  Docket Item 40.  In other words, Hunt suggests that he changed his mind about pursuing his claim against Rao and that the defendants will not be prejudiced by letting him pursue that claim.  That vague assertion does not establish excusable neglect for Hunt's failure to meet the 90-day deadline. *See Alexander v. Saul*, 5 F.4th 139, 148 (2d Cir. 2021) (explaining the factors a court considers when evaluating whether a litigant has established excusable neglect, including "whether [the delay] was within the reasonable control of the [litigant]" (citation omitted)).

For those reasons, Hunt's motion for an extension of time to substitute and his motion to substitute are untimely and therefore denied.[6]

---

[5] Hunt moved for several "extension[s] of time" to respond to various other deadlines, but he did not request an extension of time to move to substitute.  *See* Docket Items 25, 32, 34, and 45.

[6] The Court notes that it would be hesitant to grant Hunt's motion to substitute for another reason:  Hunt's claims against Rao likely would not survive a motion to dismiss for failure to state a claim.  *See* Docket Item 17 at 8-10.  So even if the AG's Office— which never entered an appearance on Rao's behalf—could locate Rao's representative

**CONCLUSION**

In light of the above, Ciulla's motion to dismiss, Docket Item 22, is GRANTED; and Hunt's motions to amend, Docket Item 36, for an extension of time to move to substitute, Docket Item 40, and to substitute, Docket Item 42, are DENIED.  The Clerk of the Court shall close this case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Hunt must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

---

or successors, it strikes this Court as unfair to require the representative or successors to defend a likely meritless claim asserted against a decedent who died more than three years ago, especially when that claim was not found sufficient to survive screening until after the decedent's death.  *Id.*; *see* Fed. R. Civ. P. 25, Notes of Advisory Committee on Rules – 1963 Amendment (explaining that a district court may deny a motion to substitute "if made long after the death . . . and circumstances have arisen rendering it unfair to allow substitution"); *cf. Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (noting that under Rule 25, "the court 'may' order substitution but it is under no duty to do so"); *Saylor v. Bastedo*, 623 F.2d 230, 236 (2d Cir. 1980) (noting that a court has "discretion" to substitute a party under Rule 25).

SO ORDERED.

Dated:   March 28, 2024
         Buffalo, New York


                                          /s/ Lawrence J. Vilardo
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE